UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JUSTIN QUINTANA,                )
                                )
        Plaintiff,               )
                                )     CIVIL ACTION NO.
VS.                             )
                                )     3:10-CV-0571-G
KEM L. LIGHTNER, ET AL.,        )
                                )
        Defendants.              )

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the plaintiff, Justin Quintana ("Quintana"), to remand this case to the state court from which it was previously removed (docket entry 6). For the reasons set forth below, the motion is granted.

## I. BACKGROUND

This is an action brought by Quintana against defendants Kem L. Lightner ("Lightner"),[1] State Farm Mutual Automobile Insurance Company ("State Farm"), and Ingenix, Inc. ("Ingenix") for violations of Quintana's right to privacy, conspiracy

---

[1] Lightner, an adjuster employed by State Farm, handled Quintana's claim seeking recovery of his medical bills and other damages. Plaintiff's Original Petition and Petition for Injunctive Relief ("Petition") at 2.

to invade his privacy, violations of the Health Information Portability and Accountability Act of 1996 ("HIPAA"), and intentional infliction of emotional distress. Defendant's Notice of Removal ("Notice of Removal") ¶ 6 (docket entry 1); *see also* Plaintiff's Original Petition and Petition for Injunctive Relief ("Petition") at 3-4, *attached to* Appendix to Notice of Removal. Quintana's claims arise out of Ingenix's alleged disclosure of medical information to State Farm.[2] Notice of Removal ¶ 6.

On January 5, 2005, Quintana was injured in an automobile accident. *Id.* ¶ 4. At the time of the accident, Quintana was a participant in the Choice EPO Plan for Employees of Tenet Healthcare Corporation ("the Plan"), a self-funded plan established and maintained under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1132. *Id.* On Quintana's behalf, the Plan paid for certain medical expenses resulting from injuries sustained in the accident. *Id.* Subsequently, Quintana filed suit in state court against the third party he alleges caused his injuries. *Id.*

In August of 2009, defendant State Farm, the liability carrier for the third party, contacted defendant Ingenix, the Plan's subrogation vendor, regarding the

---

[2] Ingenix asserts it did not provide actual medical records or medical bills to State Farm. Ingenix, Inc.'s Response to Plaintiff's Motion to Remand ("Response") ¶ 7 (docket entry 12). Rather, "it produced a summary: showing the dates of service; the claim number; the medical provider; the amount billed; the amount paid; the date of payment; and the diagnosis code." *Id.*

Plan's right to subrogation for the payments it made on Quintana's behalf for medical treatment.[3]  *Id.* ¶ 5.  Ingenix allegedly provided State Farm's employee, defendant Lightner, an itemization of Quintana's medical bills and the amounts paid to each provider for the treatment.  *Id.*  In November of 2009, Ingenix agreed to settle with State Farm on behalf of the Plan for approximately one-third of the Plan's subrogation interests.  *Id.*  When Quintana's counsel learned of the settlement, he filed suit in a Dallas County district court seeking an injunction to prevent Ingenix and State Farm from communicating about Quintana's medical information, and alleging "damages against the Defendants for violations of his right to privacy, conspiracy to invade his privacy, violations of HIPAA and intentional infliction of emotional distress."[4]  *Id.* ¶ 6.  Quintana asserts "[n]either Lightner nor State Farm held any medical authorization or other authority to communicate with Ingenix to discuss Quintana's medical treatment or records, including billings."  Petition at 2.

---

[3]     As a contracted subrogation vendor of the ERISA Plan, defendant Ingenix operates under the Plan's authority and pursues subrogation and reimbursement matters for the Plan when a third party may be liable for a participant's injuries.  Notice of Removal ¶ 5.

[4]     Quintana was concerned that disclosure of this information could adversely affect the outcome of his suit against the third party he alleges caused the accident, asserting in his state court petition that "[o]ne purpose in Ingenix and Lightner communicating and agreeing to payment was to prejudice Quintana's claims against State Farm's insured and attempt to compromise his damages."  Petition at 3, *attached to* Appendix to Notice of Removal.

On March 22, 2010, Ingenix removed the case to this court, asserting that "[t]he terms of the Summary Plan Document [("SPD")] control the authority of Ingenix, and determine the outcome of [the] Plaintiff's claims." Notice of Removal ¶ 6. Because it believes "the terms [of the SPD] are essential" to the resolution of this case, Ingenix contends that "[a]ll matters asserted by [the] Plaintiff are [completely] pre-empted by ERISA" under 29 U.S.C. §1132, and thus, removal is proper. *Id.* ¶¶ 6, 11.

## II. ANALYSIS

### A. ERISA Preemption Generally

District courts have federal question jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331; *Frank v. Bear Stearns & Company*, 128 F.3d 919, 922 (5th Cir. 1997). In determining whether a claim arises under federal law, the well-pleaded complaint rule allows a plaintiff to be the "master to decide what law he will rely upon" in pursuing his claims. *The Fair v. Kohler Die & Specialty Company*, 228 U.S. 22, 25 (1913); see also *Beneficial National Bank v. Anderson*, 539 U.S. 1, 6 (2003); *Aaron v. National Union Fire Insurance Company of Pittsburg, Pa.*, 876 F.2d 1157, 1160-61 (5th Cir. 1989), *cert. denied*, 493 U.S. 1074 (1990). Where potential remedies exist under both state and federal law, a plaintiff may choose to proceed only under state law and avoid federal court jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Carpenter v.*

*Wichita Falls Independent School District*, 44 F.3d 362, 366 (5th Cir. 1995). "There is an exception to the well-pleaded complaint rule, though, if Congress 'so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir. 2003) (en banc) (quoting *Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 63-64 (1987)), *cert. denied*, 540 U.S. 1104 (2004).

The Supreme Court has held that state-law claims seeking relief within the scope of ERISA § 502(a)(1)(B)[5] must be recharacterized as arising under federal law,

---

[5]  § 502(a)(1)(B), ERISA's civil enforcement provision, provides:

> **§ 1132. Civil enforcement**
>
> **(a) Persons empowered to bring a civil action**
>
> A civil action may be brought --
>
> **(1)** by a participant or beneficiary --
>
> * * *
>
> **(B)** to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. . . .

29 U.S.C. § 1132(a)(1)(B).

and, as so recharacterized, are removable to federal court. *Metropolitan Life*, 481 U.S. at 60, 66-67; see also *Ramirez v. Inter-Continental Hotels*, 890 F.2d 760, 762 (5th Cir. 1989). When a claimant seeks relief "within the scope of [ERISA's] civil enforcement provisions," his or her claims are subject to complete preemption. *Metropolitan Life*, 481 U.S. at 66. Complete preemption "'recharacterizes' preempted state law claims as 'arising under' federal law for the purposes of . . . making removal available to the defendant." *McClelland v. Gronwaldt*, 155 F.3d 507, 516 (5th Cir. 1998), overruled on other grounds, *Arana*, 338 at 440 n.11; see also *Johnson v. Baylor University*, 214 F.3d 630, 632 (5th Cir.), *cert. denied*, 531 U.S. 1012 (2000).

Another type of preemption, known as "conflict" or "ordinary" preemption, "arises when a federal law conflicts with state law, thus providing a federal defense to a state law claim, but does not completely preempt the field of state law so as to transform a state law claim into a federal claim." *Arana*, 338 F.3d at 439. Under ERISA's conflict preemption provision, § 514(a), "any and all State laws [are displaced or superseded] insofar as they . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a); see also *Christopher v. Mobil Oil Corporation*, 950 F.2d 1209, 1217 (5th Cir.), *cert. denied*, 506 U.S. 820 (1992). Any state law "relates to" an ERISA plan "if it has a connection with or reference to" an employee benefit plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97(1983).[6] Significantly for this case, even if

---

[6] While this "relate to" standard must be interpreted expansively to give
(continued...)

the court were to find that Quintana's state law causes of action against the defendants relate to an ERISA plan within the meaning of § 514(a), conflict preemption is insufficient to create federal jurisdiction. See *McClelland*, 155 F.3d at 516-19 (finding that a claim that relates to an ERISA plan, but does not seek to enforce rights under § 502(a), does not create federal removal jurisdiction); *Copling v. Container Store, Inc.*, 174 F.3d 590, 594-95 (5th Cir. 1999), overruled on other grounds, *Arana*, 338 at 440 n.11.[7] The court will, therefore, only examine the contours of Quintana's state law claims insofar as they relate to complete preemption.

The Fifth Circuit, in *Memorial Hospital System v. Northbrook Life Insurance Company*, 904 F.2d 236, 245 (5th Cir. 1990), outlined two unifying characteristics of cases finding ERISA preemption of a plaintiff's state law causes of action. See also *Hollis v. Provident Life & Accident Insurance Company*, 259 F.3d 410, 414 (5th Cir. 2001), *cert. denied*, 535 U.S. 986 (2002); *Baylor University Medical Center v. Arkansas Blue Cross Blue Shield*, 331 F. Supp. 2d 502, 507 (N.D. Tex. 2004) (Fish, Chief J.). Preemption of a plaintiff's state law causes of action has been found when: (1) the

---

[6](...continued)
the words their broad common-sense meaning, see *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 146-47(2001), "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 100 n.21 (1983).

[7] The Fifth Circuit partially overruled *McClelland* and *Copling*. *Arana*, 338 F.3d at 440 n. 11. *Arana* did not, however, overrule the portions of *McClelland*, 155 F.3d at 516, and *Copling*, 174 F.3d at 595, holding that conflict preemption is insufficient to create removal jurisdiction.

state law claim addresses areas of exclusive federal concern, and (2) the claim directly affects the relationship among traditional ERISA entities -- the employer, the plan and its fiduciaries, and the participants and beneficiaries. *Memorial Hospital*, 904 F.2d at 245; *Hollis*, 259 F.3d at 414; *Baylor*, 331 F. Supp. 2d at 507.

Before analyzing the impact of ERISA's preemption clause on Quintana's claims, the court hastens to note that "any doubts concerning removal must be resolved against removal and in favor of remanding the case back to state court." *Cross v. Bankers Multiple Line Insurance Company*, 810 F. Supp. 748, 750 (N.D. Tex. 1992); see also *Healy v. Ratta*, 292 U.S. 263 (1934) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."). The burden of establishing federal jurisdiction is on the party seeking removal. *Miller v. Diamond Shamrock Company*, 275 F.3d 414, 417 (5th Cir. 2001) (citing *Frank*, 128 F.3d at 921-22).

## B.  An Area of Exclusive Federal Concern

The first element of preemption is whether the state law claim addresses areas of exclusively federal concern, including the right to receive benefits under the terms of an ERISA plan. *Memorial Hospital*, 904 F.2d at 245; see also *Hollis*, 259 F.3d at 414; *Baylor*, 331 F. Supp. 2d at 507. Congress' purpose in enacting ERISA was "to promote the interests of employees and their beneficiaries in employee benefit plans,

. . . and to protect contractually defined benefits." *Firestone Tire & Rubber Company v. Bruch*, 489 U.S. 101, 113 (1989) (internal citations and quotations omitted). The Supreme Court has cautioned, however, that [it has] "addressed claims of [ERISA] pre-emption with the starting presumption that Congress [did] not intend to supplant state law." *New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Insurance Company*, 514 U.S. 645, 654 (1995); see also *Fort Halifax Packing Company, Inc. v. Coyne*, 482 U.S. 1, 19 (1987) ("ERISA preemption analysis 'must be guided by respect for the separate spheres of governmental authority preserved in our federalist system.'") (citation omitted). Thus, lawsuits against ERISA plans for commonplace, run-of-the-mill state-law claims -- although obviously affecting and involving ERISA plans -- are not preempted by ERISA. *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 833 (1988).

In the case *sub judice*, Ingenix argues that Quintana's state court petition clearly alleges claims arising under federal law. *See* Notice of Removal ¶¶ 11-13. In particular, Ingenix argues that because Quintana's causes of action constitute claims for benefits under an employee welfare benefit plan that is subject to ERISA, Quintana's state law claims are preempted by ERISA and, therefore, this court has federal question jurisdiction. *Id.* The court disagrees.

1. *Quintana's Tort Claims*

Common law torts, including invasion of privacy, conspiracy to invade privacy, and negligent infliction of emotional distress, are hardly exclusive areas of federal concern.[8] Quintana does not claim a right to receive benefits under the Plan. Instead, he is suing as a victim of Ingenix's allegedly tortious conduct that he claims exceeded the scope of its authority under the Plan. See, *e.g.*, *Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 186 (4th Cir. 2002) (concluding that the plaintiff's complaint charged the plan administrator with conduct completely unrelated to its duties under the ERISA plan); *Erlandson v. Liberty Life Assurance Company of Boston*, 320 F. Supp. 2d 501, 508 (N.D. Tex. 2004) (Fish, Chief J.) (concluding that tortious actions committed during an investigation to threaten and intimidate the plaintiff, if true, are entirely outside scope of ERISA protection); *Duchesne-Baker v. Extendicare Health Services, Inc.*, No. Civ. A. 02-0590, 2003 WL 22327192 at *6 (E.D. La. Oct. 9, 2003) ("ERISA does not provide a cause of action to participants or beneficiaries for a plan administrator's tortious acts that are unrelated to his duties pursuant to its administration of the ERISA plan.").

Ingenix argues that Quintana's causes of action should be characterized as claims, arising under ERISA § 502(a), to recover benefits or enforce rights. Notice of

---

[8] "Federalism concerns strongly counsel against imputing to Congress an intent to displace 'a whole panoply of state law in this area' absent some clearly expressed direction." *Custer v. Sweeney*, 89 F.3d 1156, 1167 (4th Cir. 1996) (citation omitted).

Removal ¶ 12. Furthermore, according to Ingenix, Quintana's claims seek "to enjoin an act or practice which violates . . . the terms of the plan" under 29 U.S.C. § 1132(a)(3). *Id*. ¶ 13. Such an interpretation, however, mischaracterizes the crux of Quintana's position. Quintana is neither attempting to recover benefits nor alleging a violation of the terms of the Plan. He is, moreover, not disputing the Plan's right to subrogation. Rather, Quintana is asserting an independent right to privacy.

Ingenix argues that the "[p]laintiff's claims . . . cannot exist independently of the Plan's terms." Notice of Removal ¶ 11. According to the defendants, Quintana's claims depend "on whether the Plan terms and provisions authorized the actions Ingenix took on the Plan's behalf." *Id.* If Ingenix disclosed confidential medical information, it acted beyond the scope of its authority under the SPD. *See* Appendix to Ingenix, Inc.'s Response to Plaintiff's Motion to Remand ("Appendix to Response") at 4, 71-72. Subrogation or reimbursement communications between Ingenix and State Farm could have occurred without the alleged disclosure of Quintana's medical records. If disclosure of such information was essential to the Plan's protection of its subrogation or reimbursement rights, then the Plan could have included a waiver term in the "Subrogation" section of the SPD.[9] However, the

---

[9] The Plan's drafters were clearly aware of the significance and effect of such term, as evidenced by the "Right to Receive and Release Needed Information" provision in the "Coordination of Benefits" section of the SPD, which permits the Claims Administrator, without notice or consent, to give needed facts to other organizations or persons for the purpose of applying rules and determining benefits
(continued...)

"Subrogation" section is silent regarding privacy.[10]  Thus, Quintana's claims against the defendants arise under a separate and independent right to privacy, which is not governed by the Plan or its terms.  While the disclosure of medical records is arguably less egregious than threatening a patient outside his doctor's office, the instant case is nonetheless similar to *Erlandson*, where the court concluded that the plaintiff's claims were not complete preempted and remanded, explaining "[l]awsuits against ERISA plans for commonplace, run of the mill state law claims -- although affecting and involving ERISA plans, are not preempted by ERISA."  320 F. Supp.2d at 507, 511.  Like the plaintiff in *Erlandson*, Quintana "does not claim a right to receive benefits under the Plan."  *Id.* at 508.  Instead, he is suing as the victim of Ingenix's "allegedly tortious conduct that was . . . unauthorized by the Plan."  *Id.*

Furthermore, the defendants mistakenly rely on *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), and *Clancy v. Employers Health*, 82 F. Supp. 2d 589 (E.D. La. 1999), *aff'd*, 248 F.3d 1142 (5th Cir.), *cert. denied*, 534 U.S. 820 (2001), to support removal.  *See* Ingenix, Inc.'s Brief in Support of its Response to Plaintiff's Motion to Remand at

---

[9](...continued)
under the Plan.  Appendix to Response at 70.

[10]     However, pursuant to the "Subrogation" section of the SPD, "[b]y participating in the Plan, [the beneficiary] and [his] Dependents agree to sign any documents and instruments and take any legal action that the plan considers necessary to protect its rights[.]" Appendix to Response at 72.  It may be arguable, therefore, that this provision of the plan obligates Quintana to waive his right to privacy.  However, this argument has not been advanced by the defendants, and the court accordingly does not consider it.

2-3.  Quintana has not alleged a denial of coverage.  In *Davila*, the respondents complained of their insurer's "refusal to approve payment," and thus, their state causes of action were completely preempted because their claims were based on "denials of coverage promised under the terms of ERISA-regulated employee benefit plans."  542 U.S. at 211.  *Clancy* similarly concerned the recovery of benefits and the enforcement of rights.  In *Clancy*, the plaintiff was covered under two policies and received benefits under both, but alleged that her ERISA-regulated provider improperly withheld benefits.  82 F. Supp. 2d at 591.  Because the case concerned coordination of benefits, it referenced a request for reimbursement or subrogation, but in a different context than the instant case.  *Id.* at 592.  In *Clancy*, the court concluded that the because the plaintiff's claim was for the *recovery of benefits*, it "should have been brought under ERISA § 502(a)[.]"  *Id.* at 597.

The instant case is distinguishable from both *Davila* and *Clancy* because Quintana is neither disputing the amount of benefits received nor the Plan's right to reimbursement or subrogation.  Rather, Quintana is arguing that Ingenix, as Claims Administrator, violated his separate and independent right to privacy.  By allegedly disclosing confidential medical information, Ingenix exceeded the scope of its authority under the Plan.  See *Dishman v. UNUM Life Insurance Company of America*,

269 F.3d 974, 984 (9th Cir. 2001).[11] Such improper conduct is outside the scope of the Plan's subrogation right, and therefore, not protected by ERISA. See *id.*

In the instant case, Quintana's claims arise from alleged torts committed while Ingenix settled its subrogation claim with the liability carrier for the third party who allegedly caused Quintana's injuries. Although Quintana's claims may bear some peripheral connection to the Plan, his tort claims exist independently of his rights as a plan participant. See *Hook v. Morrison Milling Co.*, 38 F.3d 776, 781-84 (5th Cir. 1994) (employee's negligence claim against employer for an unsafe workplace not preempted by ERISA). Accordingly, Quintana's claims are not preempted.

The court concludes that Texas common law -- rather than an employee benefit plan -- is the basis of Quintana's state law tort claims. These claims are not, therefore, completely preempted under ERISA § 502.

2. *Quintana's HIPAA Claims*

While the defendants elect not to advance such argument, it should be noted that the mention of HIPAA in plaintiff's petition does *not* confer federal jurisdiction. In *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 817 (1986), the

---

[11] In *Dishman*, the Ninth Circuit held that a state law tort claim for invasion of privacy arising from an investigation into a disability claim was not preempted by ERISA. 269 F.3d at 984. The court noted that even when there is "clearly some relationship between the conduct alleged and the administration of the plan," that relationship may not be enough to warrant preemption. *Id.* "[T]he objective of Congress in crafting Section 1144(a) was not to provide ERISA administrators with blanket immunity from garden variety torts which only peripherally impact daily plan administration." *Id.*

Supreme Court held that a state law action based on a violation of federal law does not confer federal jurisdiction unless the federal statute provides a private right of action. The Fifth Circuit has explained HIPAA, which provides civil and criminal penalties for improper disclosure of medical information, has no express provision creating a private cause of action. *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006). Enforcement of the statute is limited to the Secretary of Health and Human Services. *Id.* (citing 42 U.S.C. § 1320d-5). While other courts have suggested that federal jurisdiction might be conferred where the plaintiff's complaint specifically mentions HIPAA and alleges that the defendants violated the federal act, see *Healthtek Solutions, Inc. v. Fortis Benefits Insurance Company*, 274 F. Supp. 2d 767, 774 (E.D. Virginia 2003) ("While HIPAA does not explicitly recognize a private right of action, at least one court has held that a private right of action is provided by ERISA's comprehensive remedial scheme contained in 29 U.S.C. § 1132" (citing *Stang v. Clifton Gunderson HealthCare Plan*, 71 F. Supp. 2d 926, 932 (W.D. Wis. 1999)), this court declines to depart from Fifth Circuit precedent.

C. A Traditional ERISA Entity

The second element of the *Memorial Hospital* complete preemption test is whether the claims directly affect the relationship among traditional ERISA entities -- the employer, the plan and its fiduciaries, and the participants and beneficiaries. *Memorial Hospital*, 904 F.2d at 245; see also *Hollis*, 259 F.3d at 414; *Baylor*, 331

F. Supp. 2d at 508. With respect to the present case, "ERISA permits suits for breach of fiduciary duty only against ERISA defined fiduciaries." *Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona)*, 125 F.3d 715, 719 (9th Cir. 1997); see also *Reich v. Lancaster*, 55 F.3d 1034, 1046 (5th Cir. 1995). ERISA defines a fiduciary as anyone who exercises discretionary authority or control respecting the management or administration of an employee benefit plan. 29 U.S.C. § 1002(21)(A). An administrator is not a plan fiduciary if the plan documents grant the plan sponsor the ultimate right to review and modify benefit determinations made by that administrator. See, *e.g.*, *Reich v. Lancaster*, 55 F.3d at 1049 (holding that persons carrying out perfunctory or ministerial duties are not fiduciaries unless they "exercise discretionary authority and control that amounts to actual decision making power"); *Kyle Railways, Inc. v. Pacific Administration Services, Inc.*, 990 F.2d 513, 516 (9th Cir. 1993) (finding that the administrator of an ERISA plan was not a fiduciary where, according to the agreement between the employer and the administrator, the employer retained ultimate responsibility for all claims made under the plan); *Baker v. Big Star Division of the Grand Union Company*, 893 F.2d 288, 290 (11th Cir. 1989) ("[A] plan administrator who merely performs claims processing, investigatory, and record keeping duties is not a fiduciary") (internal quotation marks and citation omitted).

In the instant case, Quintana further asserts that his claims are not preempted because "none of the parties are the plan administrator or an affiliate." Plaintiff's Reply to Ingenix's Response to Plaintiff's Motion for Remand ("Plaintiff's Reply") at 4. With the possible exception of the defendant Ingenix, the court agrees. In support of his argument, Quintana cites Ingenix's Appendix, which qualifies Ingenix, an affiliate of United Health Care, as "Claims Administrator." *See* Appendix to Response at 77. According to the SPD, the Claims Administrator has "the *discretion* and responsibility to determine Covered Persons' eligibility for and the amount of any Plan Benefits." *Id.* at 2 (emphasis added). However, the Benefits Administration Committee at Tenet Healthcare Corporation, as Plan Administrator "has reserved the authority to make final claims determination regarding *pre-service* and *post service* claims[.]" *Id.* at 2, 86-87 (emphasis added). Thus, Ingenix's discretion as Claims Administrator is limited to "urgent care claims." See *id.* at 61. While the nature of Quintana's insurance claims are not expressly clear from the pleadings or motions, they appear to be "urgent care claims" over which Ingenix exercises discretion and responsibility to determine eligibility and amount. *Id*. at 2. Consequently, for purposes of this case, Ingenix may very well be an ERISA fiduciary. See, *e.g.*, *Reich*, 55 F.3d at 1049. Because the court has determined that Quintana's claim is outside the scope of §502, however, such a finding is immaterial. See, *e.g.*, *Memorial Hospital*, 904 F.2d at 245.

## III. CONCLUSION

For the above state reasons, the plaintiff's motion to remand the case to the state court from which it was previously removed is **GRANTED**. This case is **REMANDED** to the **193rd Judicial District Court of Dallas County, Texas**. The clerk shall mail a certified copy of this memorandum opinion and order to the district clerk of Dallas County, Texas. 28 U.S.C. § 1447(c).

**SO ORDERED**.

March 21, 2011.

*/s/ A. Joe Fish*
**A. JOE FISH**
**Senior United States District Judge**